## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

**DOUGLAS STUART QUEEN,**

      **Plaintiff,**

      **v.**

      **Case No. 25-2298-JAR-TJJ**

**NATALIE CANALE, et al.,**

      **Defendants.**

---

## MEMORANDUM AND ORDER

Plaintiff Douglas Stuart Queen, proceeding pro se and in forma pauperis, filed this action on June 2, 2025, alleging civil rights claims against the following Defendants: Natalie Canale of the Wyandotte County Sheriff's Department, the Wyandotte County Sheriff's Department, Wyandotte County Mental Health Services, AdventHealth Shawnee Mission, Osawatomie State Hospital (Kansas Department for Aging and Disability Services), and John Does 1–3. Before the Court are Defendant Osawatomie State Hospital's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 41), Defendant Natalie Canale's Motion to Dismiss First Amended Complaint (Doc. 43), Defendant Wyandotte County Sheriff's Department's Motion to Dismiss First Amended Complaint (Doc. 53), Wyandot Behavioral Health Network, Inc.'s Motion to Dismiss First Amended Complaint (Doc. 59), Plaintiff's Motions for Leave to file Sur-Reply (Docs. 79, 89), and Plaintiff's Motion for Leave to File First Amended Complaint (Doc. 91). The motions are fully briefed, and the Court is prepared to rule. For the reasons stated below, the Court grants Plaintiff's motions for leave to file sur-reply, grants Defendants' motions to dismiss, and denies Plaintiff's motion for leave to amend.

## I.     Background

The following facts are alleged in the Amended Complaint and assumed to be true for purposes of deciding this motion.  On May 15, 2025, Kansas City, Kansas police officers arrested Plaintiff.  Defendant Natalie Canale, a mental health co-responder with the Wyandotte County Sheriff's Department ("WCSD"), convinced Plaintiff to surrender his legally-owned firearm and personal knife to WCSD, assuring him it would be temporary.  Canale also convinced Plaintiff to attend a two-to-three-day mental health treatment program at AdventHealth Shawnee Mission Hospital ("Advent"), which Plaintiff understood would be voluntary and temporary.  But when Plaintiff arrived at Advent, he was physically detained by Advent Security Officers (John Does 1–3), stripped of his belongings, and placed in involuntary psychiatric confinement, where he remained for five days.  At the end of the five-day period, Plaintiff was transported to Osawatomie State Hospital for another five days.  While at Osawatomie State Hospital, he was involuntarily administered antipsychotic medication.

"Plaintiff is now subject to an ongoing court-ordered drug therapy plan, has incurred further legal complications, and has experienced physical, emotional, and reputational harm, including distress, humiliation, and long-term anxiety."[1]  On May 30, 2025, Canale emailed Plaintiff and stated she was "sorry ur episode had gotten taken to the extreme.  It's not what I wanted for you at all."[2]  Canale told Plaintiff she was looking into alternative housing for him and asked where he was staying.

Plaintiff alleges four claims in the Amended Complaint: (1) Fourth and Fourteenth Amendment violations under 42 U.S.C. § 1983 against all Defendants; (2) Second Amendment

---

[1] Doc. 7 at 3.

[2] *Id.*

violations under 42 U.S.C. § 1983 against Canale and WCSD based on the seizure of his firearm; (3) medical battery and violation of bodily autonomy against Advent and Osawatomie State Hospital; and (4) abuse of power and malicious detention against all Defendants.  Plaintiff seeks monetary damages, an injunction terminating his court-ordered psychiatric drug therapy, and the immediate return of his personal property.

Defendants move to dismiss based on Eleventh Amendment immunity, insufficient service of process, and failure to state a claim.  After the motions to dismiss were fully briefed, Plaintiff moved for leave to amend.  In his proposed second amended complaint, Plaintiff does not change the claims asserted in the Amended Complaint.  But he proposes adding two new Defendants: (1) Mission Roads Studio, LLC, and (2) Officer Lopez, of the WCSD, in his individual and official capacity.  Plaintiff also proposes adding several new factual allegations to support his claims.

B.    **Standards**

1.    **Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1)**

When a defendant raises Eleventh Amendment immunity in a motion to dismiss, it implicates this Court's subject matter jurisdiction and, thus, arises under Rule 12(b)(1).[3]  Subject matter jurisdiction is a threshold defense that must be addressed before any merits-based issues.[4]  Federal courts are courts of limited jurisdiction and must therefore have a statutory or constitutional basis for exercising jurisdiction.[5]  The party seeking to invoke federal subject

---

[3] *United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942–44 (10th Cir. 2008).

[4] *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

[5] *United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995).

matter jurisdiction has the burden to establish that jurisdiction is proper,[6] and mere conclusory allegations of jurisdiction are not enough.[7]

### 2.    Insufficient Service of Process under Fed. R. Civ. P. 12(b)(5)

Plaintiff must validly serve process on a defendant under Fed. R. Civ. P. 4 before the Court can exercise personal jurisdiction.[8]  "Plaintiff bears the burden to prove valid service."[9]  In ruling on a Rule 12(b)(5) motion to dismiss, "[t]he parties may submit affidavits and other documentary evidence for the Court's consideration, and plaintiff is entitled to the benefit of any factual doubt."[10]  "A pro se plaintiff still must comply with Rule 4 and Kansas law for service of process."[11]

### 3.    Failure to State a Claim under Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[12] and include "enough facts to state a claim to relief that is plausible on its face."[13]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[14]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must

---

[6] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

[7] *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

[8] *Wanjiku v. Johnson County*, 173 F. Supp. 3d 1217, 1223 (D. Kan. 2016) (citations omitted).

[9] *Id.* (citing *Oltremari ex rel. McDaniel v. Kan. Soc. & Rehab. Serv.*, 871 F. Supp. 1331, 1349 (D. Kan. 1994)).

[10] *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1260 (D. Kan. 2008).

[11] *Wanjiku*, 173 F. Supp. 3d at 1228 (citing *Oltremari*, 871 F. Supp. at 1350).

[12] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[13] *Id.* at 570.

[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

offer specific factual allegations to support each claim."[15]  The Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[16]  The Court will view all well-pleaded factual allegations in the light most favorable to the plaintiff.[17]  And because Plaintiff proceeds pro se, the Court must construe his filings liberally and hold them to a less stringent standard than formal pleadings drafted by attorneys.[18]  However, Plaintiff's pro se status does not excuse him from complying with federal and local rules.[19]

### 4.    Leave to Amend

Under Fed. R. Civ. P. 15(a), leave to amend "shall be freely given when justice so requires."  The Tenth Circuit counsels that "[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."[20]  An amendment is futile if it "would not withstand a motion to dismiss or otherwise fails to state a claim upon which relief may be granted."[21]

The general rule is that pro se parties should be allowed leave to amend, but the Court may appropriately dismiss a claim without allowing an amendment "where it is obvious that the

---

[15] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[16] *Iqbal*, 556 U.S. at 678.

[17] *Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs of Cnty. of Arapahoe, Colo.*, 633 F.3d 1022, 1025 (10th Cir. 2011).

[18] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[19] *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

[20] *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

[21] *Mackley v. TW Telecom Holdings, Inc.*, 296 F.R.D. 655, 660 (D. Kan. 2014) (quoting *Wenner v. Bank of Am., NA*, 637 F. Supp. 2d 944, 950 (D. Kan. 2009)).

plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."[22]  "[T]he district court should allow a plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim."[23]

## III.    Discussion

### A.    Eleventh Amendment Immunity

Defendant Osawatomie State Hospital moves to dismiss on the basis of Eleventh Amendment, or sovereign immunity.  "Sovereign immunity is the privilege of the sovereign not to be sued without its consent."[24]  States and state agencies are generally immune from suit.[25] Sovereign immunity thus "bars suits for money damages against states, state agencies, and state officers in their official capacities."[26]  The Tenth Circuit has explained that "[t]he arm-of-the-state doctrine bestows immunity on entities created by state governments that operate as alter egos or instrumentalities of the states."[27]

When sovereign immunity applies, it deprives the court of subject matter jurisdiction, thereby shielding the government from suit.[28]  Sovereign immunity does not apply when a state waives its immunity, and in some circumstances, Congress may abrogate states' sovereign immunity by appropriate legislation.[29]  "But absent waiver or valid abrogation, federal courts

---

[22] *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (alteration omitted) (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010)).

[23] *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001).

[24] *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011).

[25] *Id.*

[26] *Chilcoat v. San Juan County*, 41 F.4th 1196, 1213–14 (10th Cir. 2022).

[27] *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000) (quoting *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 574 (10th Cir. 1996)).

[28] *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1080 (10th Cir. 2006).

[29] *Va. Off. for Prot. & Advoc.*, 563 U.S. at 253–54.

may not entertain a private person's suit against a State."[30]  A valid waiver of sovereign immunity "cannot be implied but must be unequivocally expressed."[31]  Similarly, "Congress' intent to abrogate the States' immunity from suit must be obvious from 'a clear legislative statement.'"[32]

Osawatomie State Hospital is an agency or department of the State of Kansas.[33]  There has been no waiver or valid abrogation by the State of Kansas for claims under 42 U.S.C. § 1983.[34]  And while Kansas "has consented to suit for damages under the Kansas Tort Claims Act," that act "is not a waiver of *Eleventh Amendment* immunity.  We know this because the statute tells us so."[35]

Plaintiff asserts an exception to Eleventh Amendment immunity applies because he seeks prospective injunctive relief.  Indeed, in *Ex parte Young*, the Supreme Court carved out an exception to sovereign immunity where a plaintiff seeks prospective declaratory and injunctive relief for continuing violations of federal law by the State.[36]  To determine whether the *Ex parte Young* exception applies, this Court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized

---

[30] *Id.* at 254.

[31] *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. King*, 395 U.S. 1, 4 (1969)).

[32] *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996) (quoting *Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 786 (1991)).

[33] *See* K.S.A. § 76-1201 (designating Osawatomie State Hospital as a state hospital); *Taylor v. Osawatomie State Hosp.*, No. 07-2346-KHV, 2008 WL 2891011, at *3 (D. Kan. July 24, 2008) (concluding Osawatomie State Hospital is an arm of the state).

[34] *See Quern v. Jordan*, 440 U.S. 332, 338–40 (1979); K.S.A. § 75-6116(g).

[35] *Jones v. Courtney*, 466 F. App'x 696, 700 (10th Cir. 2012) (quoting *Wendt v. Univ. of Kan. Med. Ctr.*, 59 P.3d 325, 335 (Kan. 2002)).

[36] 209 U.S. 123 (1908); *see Chilcoat v. San Juan County*, 41 F.4th 1196, 1213–14 (10th Cir. 2022).

as prospective."[37]  "*Ex parte Young* 'may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past.'"[38]  Here, Plaintiff seeks an injunction terminating his court-ordered psychiatric drug therapy, but this prospective relief is not directed at Osawatomie State Hospital; he alleges that he was released from that facility after five days. Therefore, the *Ex parte Young* exception to sovereign immunity does not apply to this Defendant, and Plaintiff's claims against it must be dismissed under the doctrine of sovereign immunity.

### B.     Failure to State a Claim

Having dismissed Osawatomie State Hospital, the following claims remain at issue against the moving Defendants: Count I—Fourth and Fourteenth Amendment Violations under 42 U.S.C. § 1983 against Canale, WCSD, and Wyandotte County Mental Health Services; Count II—Second Amendment violations under 42 U.S.C. § 1983 against Canale and WCSD; and Count IV—abuse of power and malicious detention against Canale, WCSD, and Wyandotte County Mental Health Services.  Wyandotte County Mental Health Services moves to dismiss Counts I and IV on the basis that it is not a state actor, and that there are no allegations in the Complaint that it participated in any conduct that give rise to his claims.  Canale invokes qualified immunity on the § 1983 claims alleged against her in her individual capacity.  WCSD moves to dismiss because it lacks the capacity for suit and for failure to allege sufficient facts demonstrating an official-capacity claim under § 1983.  The Court first considers Plaintiff's federal claims alleged in Counts I and II and then proceeds to consider Count IV.

---

[37] *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

[38] *Id.* (quoting *Collins v. Daniels*, 916 F.3d 1302, 1316 (10th Cir. 2019)).

### 1.    Federal Claims Alleged in Counts I and II

Plaintiff alleges claims for constitutional violations under 42 U.S.C. § 1983 in Counts I and II of the Amended Complaint against all three movants.  To state a claim for relief under § 1983, Plaintiff must allege "(1) deprivation of a federally protected right by (2) an actor acting under color of state law."[39]  "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."[40]  And to the extent Plaintiff asserts liability against governmental entities, the Supreme Court has made clear that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."[41]  "[I]n other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."[42]  Instead, "the government as an entity" may be held liable only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."[43]

### a.    Wyandotte County Mental Health Services

On September 3, 2025, Wyandot Behavioral Health Network, Inc. ("WBHN") filed a Corrected Disclosure of Corporate Interests indicating that Plaintiff improperly named Wyandotte County Mental Health Services in this matter.  WBHN has appeared and filed a motion to dismiss on behalf of Wyandotte County Mental Health Services.[44]  It argues that there

---

[39] *VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1160 (10th Cir. 2021) (quoting *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016)).

[40] *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997).

[41] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

[42] *Id.* at 691; *see also Jenkins v. Wood*, 81 F.3d 988, 993 (10th Cir. 1996) ("A municipality may not be held liable under 42 U.S.C. § 1983 simply because it employs a person who violated a plaintiff's federally protected rights." (citing *Monell*, 436 U.S. at 694)).

[43] *Monell*, 436 U.S. at 694.

[44] Doc. 9 at 1 n.1.

are no allegations in the Amended Complaint that any of its conduct, or its employees' conduct, give rise to Plaintiff's claims. It argues further that it is not a state actor, so it cannot be liable under § 1983. Plaintiff responds that WBHN jointly participated with law enforcement in the detention and seizures that give rise to his claims; thus, it can be considered a state actor for purposes of § 1983.

The Court agrees with WBHN that Plaintiff fails to allege facts to support the first element of his § 1983 claim, that it was involved in the deprivation of a federally protected right. Plaintiff alleges that WBHN "was involved" with coordinating and facilitating his involuntary psychiatric evaluation and treatment, but there are no facts alleged about what WBHN did that deprived Plaintiff of his constitutional rights. "When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive-voice showing that his rights 'were violated' will not suffice. Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that 'defendants' infringed his rights."[45] Plaintiff has failed to allege facts to support the particular conduct by WBHN that gives rise to his claims.

Plaintiff also fails to allege sufficient facts to support the state action element of his § 1983 claim against WBHN. "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'"[46] To determine if Plaintiff can hold a private actor accountable for constitutional violations as a state actor, the Court must determine "whether the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State.'"[47]

---

[45] *Pahls v. Thomas*, 718 F.3d 1210, 1225–26 (10th Cir. 2013).

[46] *Am. Mfrs. Mut. Ins. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)).

[47] *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1235 (10th Cir. 2020) (quoting *Wasatch Equal. v. Alta Ski Lifts Co.*, 820 F.3d 381, 387 (10th Cir. 2016)).

To satisfy the so-called "joint action test" for determining state action, the private party must be "a willful participant in joint action with the State or its agents."[48]

Plaintiff does not dispute that WBHN is a private actor. And the Court can take judicial notice of WBHN's corporate status.[49] Plaintiff instead argues that WBHN acted in concert with WCSD and therefore should be held accountable as a state actor. There are no facts in the Amended Complaint that give rise to a plausible inference that WBHN acted in concert with the State to violate Plaintiff's constitutional rights. Plaintiff argues in his response that he alleged Canale acted in conjunction with WBHN and that Canale acted under WBHN's authority. But there is a single factual allegation in the Complaint about this party: "Defendant Wyandotte County Mental Health Services is a governmental mental health provider operating in Wyandotte County, Kansas, and was involved in coordinating and facilitating involuntary psychiatric evaluation and treatment."[50] The Amended Complaint also alleges that Canale is employed by WCSD, not WBHN, so it is not reasonable to infer from the allegations that she was operating under the authority of WBHN. Finally, "cooperation with state authorities and certification for involuntary commitment under state law are insufficient to qualify defendants as state actors."[51] Thus, the Court finds that Plaintiff fails to allege sufficient facts demonstrating that WBHN is a

---

[48] *Id.* (quoting *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1453 (10th Cir. 1995)).

[49] Although the Court generally may not consider matters outside the pleadings on a motion to dismiss under Rule 12(b)(6), the Court "may 'take judicial notice of its own files and records, as well as facts which are a matter of public record,' without converting a motion to dismiss into a motion for summary judgment." *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020). Exhibit A, attached to WBHN's motion, is the Kansas Secretary of State's corporate record for WBHN showing that it is a "Domestic Not For-Profit Corporation." Doc. 60-1. The Court may take judicial notice of this document because it is a matter of public record that is not subject to reasonable dispute. *See* Fed. R. Evid. 201; *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1218 (10th Cir. 2012) ("The contents of an administrative agency's publicly available files, after all, traditionally qualify for judicial notice . . . .").

[50] Doc. 7 at 2 ¶ 6.

[51] *Wakeland v. Montano*, 203 F.3d 836 (table), 2000 WL 94006, at *4 (10th Cir. Jan. 28, 2000).

state actor, an essential element of his § 1983 claims. Plaintiff's § 1983 claim against WBHN therefore must be dismissed for failure to state a claim.

### b.    Canale

Canale moves to dismiss the individual-capacity claims alleged against her on the basis of qualified immunity. The doctrine of qualified immunity "protects government officials from suit for civil damages if their conduct does not violate clearly established statutory or constitutional rights."[52] "Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity."[53] "Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment."[54] At the motion to dismiss stage, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness."[55] The court considers: "(1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct."[56]

Once the defense of qualified immunity is adequately raised, the plaintiff bears the burden to show that the defendant is not entitled to qualified immunity.[57] The court has

---

[52] *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016); *see also Ziglar v. Abbasi*, 582 U.S. 120, 150–51 (2017) ("The doctrine of qualified immunity gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011))).

[53] *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).

[54] *Id.* (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)).

[55] *Id.* (internal quotation marks omitted) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

[56] *Myers v. Brewer*, 773 F. App'x 1032, 1036 (10th Cir. 2019) (quoting *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013)).

[57] *Thomas*, 765 F.3d at 1194.

discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[58]  "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity."[59]

Canale first argues that the facts as alleged are insufficient to demonstrate a plausible claim that she violated the Fourth, Fourteenth, or Second Amendments.  Plaintiff alleges in Count I that he was unlawfully seized and detained in violation of the Fourth and Fourteenth Amendments because he was detained without a warrant, confined without due process, and placed in psychiatric detention without his consent.  Under the Fourth Amendment, which applies to the states through the Fourteenth Amendment's Due Process Clause, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."[60]  In general, to show that he was seized for Fourth Amendment purposes, Plaintiff must show that "a reasonable person would have believed he was not free to leave."[61]  And "officers who decide to commit an individual for a mental health evaluation must be able to articulate specific facts that lead them to believe the person is a threat to herself or others."[62]

According to the Amended Complaint, Canale "persuaded Plaintiff to voluntarily attend a short-term (2–3 day) mental health treatment program at [Advent], . . . specifically referencing treatment by a particular physician" and emailed Plaintiff on May 30, 2025, to check on him and

---

[58] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[59] *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

[60] U.S. Const. amend. iv.

[61] *Fuerschbach v. Sw. Airlines Co.*, 439 F.3d 1197, 1202–03 (10th Cir. 2006) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988)).

[62] *Meyer v. Bd. of Cnty. Comm'rs of Harper Cnty.*, 482 F.3d 1232, 1240 (10th Cir. 2007).

apologize that the "episode" was "taken to the extreme."[63] Thus, viewing the facts alleged as true, Canale convinced Plaintiff to *voluntarily* enter a mental health treatment program at Advent. There are no facts that establish that she arrested him, threatened him, or even made the decision to have him detained for a mental health evaluation.[64] Instead, Plaintiff alleges that the John Doe security officers at Advent physically restrained and detained him. Thus, the facts as alleged by Plaintiff do not demonstrate that Canale personally participated in Plaintiff's seizure. And Plaintiff cites no clearly established law that an officer's attempts to convince a person to relinquish a firearm in conjunction with mental health treatment is unconstitutional.

Plaintiff also alleges a Second Amendment violation by Canale for coercing him to turn over his firearm. To the extent Plaintiff alleges a claim based on the unlawful seizure of his firearm, no such claim arises under the Second Amendment.[65] And even if it did, the Second Amendment protects an individual's right to bear arms for self-defense,[66] but this right does not extend to the "longstanding prohibitions on the possession of firearms by felons and the mentally ill."[67] The facts alleged do not support a plausible claim that Plaintiff's firearm was taken in violation of the Second Amendment because he relinquished it in conjunction with entering into mental health treatment at Advent. To the extent Plaintiff asserts a Fourth Amendment claim based on the seizure of his firearm, the facts do not support that Canale seized Plaintiff's firearm (or other property) because he states that he voluntarily turned it over. For all of these reasons,

---

[63] Doc. 7 at 2–3.

[64] *See United States v. Hill*, 199 F.3d 1143, 1147–48 (10th Cir. 1999) (setting forth relevant factors to consider whether a reasonable person would feel free to leave an encounter with the police).

[65] *See, e.g.*, *Rodgers v. Knight*, 781 F.3d 932, 941–42 (8th Cir. 2015) ("Lawful seizure and retention of firearms, however, does not violate the Second Amendment. Indeed, this court has held that even the unlawful retention of specific firearms does not violate the Second Amendment, because the seizure of one firearm does not prohibit the owner from retaining or acquiring other firearms.").

[66] *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 70 (2022).

[67] *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008).

the Court grants Canale's motion to dismiss the individual-capacity claims alleged against her under § 1983.

### c.    WCSD

Plaintiff also alleges § 1983 claims against WCSD.  As an initial matter, Plaintiff's claims against WCSD must be dismissed because it is not an agency amenable to suit.  Under Fed. R. Civ. P. 17(b), the capacity of a party to be sued in federal court is determined by the law of the state where the court is located.[68]  Kansas courts have held that "[s]ubordinate government agencies, in the absence of statutory authorization, ordinarily do not have the capacity to sue or be sued."[69]  While the statutory authority need not explicitly authorize the capacity to sue or be sued, the statute should grant some power to the agency so that it has an implied capacity.[70]  "For example, conferring power on a subordinate government agency to own or control property would have no meaning if the agency could not vindicate its rights in the property by suing in a court of law."[71]

Here, there is no authority granting WCSD the capacity to sue or be sued and, under Kansas law, courts have found that police departments lack such capacity.[72]  There is also no statutory power that would imply the capacity to sue or be sued.

---

[68] Fed. R. Civ. P. 17(b).

[69] *Mashaney v. Bd. of Indigents' Def. Servs.*, 355 P.3d 667, 672 (Kan. 2015) (quoting *Lindenman v. Umscheid*, 875 P.2d 964, 977 (Kan. 1994)).

[70] *Lowery v. Cty. of Riley*, No. 04-3101-JTM, 2005 WL 1242376, at *7 (D. Kan. May 25, 2005) (citing Syl. ¶ 10, *Lindenman*, 875 P.2d 964; *Bd. of Library Dirs. v. City of Fort Scott*, 7 P.2d 533, 535 (Kan. 1932)).

[71] *Id.*

[72] *See, e.g., Brodzki v. Topeka Police Dep't*, 437 F. App'x 641, 641 (10th Cir. 2011) (affirming a District of Kansas court's finding that police department lacked capacity to sue and be sued under Kansas law); *Hopkins v. State*, 702 P.2d 311, 316 (Kan. 1985) (holding the Kansas Highway Patrol did not have capacity to sue or be sued); *Neighbors v. Lawrence Police Dep't*, No. 15-CV-4921-DDC, 2016 WL 3685355, at *6 (D. Kan. July 12, 2016) (dismissing the Lawrence Police Department because it is well established in Kansas that police departments are not a governmental entity subject to suit); *Pfuetze v. Kansas*, No. 10-1139-CM-GLR, 2010 WL 3892243, at *5 (D. Kan. Sept. 29, 2010) (finding no Kansas statute gave the Wichita Police Department the capacity to sue or be sued);

WCSD also argues that even if the correct party is named, Plaintiff fails to plausibly allege an official-capacity claim against it.  The Court agrees.  To plead municipal liability, a plaintiff must allege "the existence of a municipal policy or custom, and . . . that there is a direct causal link between the policy or custom and the injury alleged."[73]  In short, a plaintiff must adequately allege "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation."[74]

As described above, Plaintiff has not adequately alleged that Canale, the only WCSD employee named in the Amended Complaint, committed a constitutional violation.  Nor has Plaintiff identified a policy or custom that was the moving force behind any constitutional deprivation.  Therefore, the § 1983 official-capacity claims asserted against WCSD must be dismissed.  Because the Court finds that WCSD does not have the capacity to be sued and even if it did, Plaintiff fails to state a plausible claim against it, it need not reach this Defendant's motion based on insufficient service of process under Fed. R. Civ. P. 12(b)(5).

### 2.    Count IV for "Abuse of Power and Malicious Detention"

In Count IV, Plaintiff titles his claim "abuse of power and malicious detention."  There are no such causes of action under federal or Kansas law.  Plaintiff asserts that all Defendants "acted maliciously, fraudulently, or with reckless disregard for Plaintiff's rights when falsely inducing Plaintiff into treatment, misrepresenting the voluntary nature of care, and unlawfully detaining and medicating him."[75]  Liberally construing the Amended Complaint, the Court

---

*Whayne v. Kansas*, 980 F. Supp. 387, 391 (D. Kan. 1997) (concluding Topeka Police Department is "only a subunit of city government and, therefore, is not a governmental entity subject to suit").

[73] *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)).

[74] *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998).

[75] Doc. 7 at 5.

considers whether Plaintiff plausibly asserts a state law claim for fraudulent misrepresentation.[76] To demonstrate a fraudulent misrepresentation under Kansas law, Plaintiff must show that each Defendant "made an untrue statement of fact while knowing it to be untrue and with intent to deceive or with reckless disregard as to the truth, the plaintiff justifiably relied on the statement, and as a result of this justifiable reliance, the plaintiff suffered damage."[77]  Plaintiff alleges no facts that would give rise to a plausible claim that any Defendant other than Canale made a statement to him that would trigger liability under this cause of action; therefore, this claim must be dismissed as to WBHN and WCSD.

Plaintiff alleges that Canale misrepresented to him that he would be relinquishing his firearm and knife on a temporary basis, and that his short-term care at Advent would be voluntary and only last two to three days.  Instead, Plaintiff claims that Defendants permanently kept his knife and firearm and that his stay at Advent was involuntary, converted into an involuntary stay at Osawatomie State Hospital, and caused him to be involuntarily medicated. Despite Plaintiff's formulaic recitation of the knowledge element of a fraudulent misrepresentation claim, there are no facts to support that Canale's statements were made with knowledge that they were untrue or that she had a reckless disregard for their truth at the time she made them.  In fact, the email included in Plaintiff's Amended Complaint suggests that she did not have such knowledge because she states: "It's not what I wanted for you at all."[78]

---

[76] Generally, when the Court dismisses all federal claims upon which it has original jurisdiction, it should consider whether to exercise supplemental jurisdiction over the remaining state law claims.  But 28 U.S.C. § 1367(c)(3) "require[s] dismissal of all original jurisdiction claims against all defendants before" the Court can decline to exercise supplemental jurisdiction, so long as the state law claims are part of the same case or controversy as the remaining federal claims.  *Gorenc v. Proverbs*, 462 F. Supp. 3d 1137, 1157–58 (D. Kan. 2020).  Because several Defendants remain in this lawsuit, the Court does not consider whether to decline supplemental jurisdiction despite finding the federal claims against the moving Defendants must be dismissed.

[77] *Galindo v. Taylor*, 723 F. Supp. 3d 1008, 1043–44 (D. Kan. 2024) (quoting *Garver v. Roth Cos.*, No. 19-CV-02354, 2022 WL 228287, at *4 (D. Kan. Jan. 26, 2022)).

[78] Doc. 7 at 3.

Accordingly, the Court finds that Plaintiff fails to plausibly allege a fraudulent misrepresentation claim against Canale. Count IV is therefore dismissed against all of the remaining Defendants.

## II.    Leave to Amend

Plaintiff previously moved for leave to amend, but both the undersigned and Judge James denied those motions because they were inappropriate attempts to consolidate this case with a related case he filed, Case No. 25-2292. In Case No. 25-2292, Plaintiff alleges claims arising out of his arrest earlier in the day on May 15, 2025. He alleges that his landlord, Mission Road Studios, LLC, provided false statements to police that he stole lumber from the apartment dumpster; that police used excessive force during his arrest; that when Kansas City, Kansas EMS eventually arrived and transported Plaintiff to the University of Kansas Medical Center, he was never seen by a provider and quickly discharged; that Plaintiff was forced to walk home with no shoes, cane, or escort; and that when he was in custody, police took his motorcycle keys and $10,000 in cash from his wallet. The claims alleged in this case, in contrast, relate to Plaintiff's mental health treatment and the seizure of his personal property related to that mental health treatment, which took place later that day.

Plaintiff's attempt to add Defendant Mission Road Studios, LLC, would bring into this case claims and allegations related to Case No. 25-2292. In that case, Mission Road Studios, LLC is a party, and Plaintiff has already alleged in that case that Mission Road Studios made a false claim against him that led to his seizure on May 15, 2025. Similarly, Plaintiff seeks to add Officer Lopez as a party, claiming that he entered Plaintiff's apartment without a warrant and confiscated his firearm, in coordination with Officer Canale. Again, to the extent this party's conduct relates to Plaintiff's initial detention at his apartment, it is more appropriately related to that case.

The Court further finds that Plaintiff's proposed amendments would be futile because they do not cure the deficiencies in the Amended Complaint identified by the Court in this Order: (1) Osawatomie State Hospital is immune from the § 1983 claims under the Eleventh Amendment; (2) WBHN is not subject to liability under § 1983 because it is not a state actor based on the facts as alleged; (3) Officer Canale is not subject to individual liability; and (4) WCSD is not liable on any official-capacity claim alleged. There are no additional facts in the proposed second amended complaint that would change the Court's rulings on these matters. Accordingly, the Court denies Plaintiff's motion for leave to amend.

### III.    Motions for Default

Plaintiff moves for default against the three Kansas City, Kansas entities that have not yet appeared in this matter. In his amended motion for default filed on August 5, 2025, Plaintiff asserts that these Defendants were served with process but failed to plead or otherwise defend.

A defendant must serve an answer within 21 days after being served with the summons and complaint or within 60 days if the defendant waives service.[79] When a party fails to plead or otherwise defend, and that fact is made to appear by affidavit or otherwise, default should be entered against the party.[80] Obtaining default judgment is a two-step process: (1) the plaintiff must obtain an entry of default, and (2) then the plaintiff may move for the entry of a default judgment.[81]

Judge James conducted a status conference with the parties after Plaintiff filed his motions for default judgment. Judge James explained in her follow-up order that the addresses

---

[79] Fed. R. Civ. P. 12(a)(1).

[80] Fed. R. Civ. P. 55(a).

[81] *See Watkins v. Donnelly*, 551 F. App'x 953, 958 (10th Cir. 2014) ("Entry of default by the clerk is a necessary prerequisite that must be performed before a district court is permitted to issue a default judgment.").

Plaintiff had provided for the Kansas City, Kansas municipal entities appeared incorrect and ordered him to file a notice with the correct addresses by August 29, 2025, after which the Clerk would issue new summons for each Defendant.[82]  That same day, Plaintiff submitted his notice, and summons issued to these entities on August 27, 2025.  Thus, Plaintiff's motions for default judgment must be denied as premature because these Defendants had not been properly served at the time the motions for default were filed.[83]

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Osawatomie State Hospital's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 41), Defendant Natalie Canale's Motion to Dismiss First Amended Complaint (Doc. 43), Defendant Wyandotte County Sheriff's Department's Motion to Dismiss First Amended Complaint (Doc. 53), Wyandot Behavioral Health Network, Inc.'s Motion to Dismiss First Amended Complaint (Doc. 59), and Plaintiff's Motions for Leave to file Sur-Reply (Docs. 79, 89) are **granted**.  The Clerk is directed to terminate Osawatomie State Hospital, Natalie Canale, Wyandotte County Sheriff's Department, and Wyandotte County Mental Health Services as parties to this action.

**IT IS FURTHER ORDERED BY THE COURT** that Plaintiff's Motion for Leave to File First Amended Complaint (Doc. 91) is **denied**.

**IT IS FURTHER ORDERED BY THE COURT** that Plaintiff's Motions for Leave to file Sur-Reply (Docs. 79, 89) is **granted.**

**IT IS FURTHER ORDERED BY THE COURT** that Plaintiff's Motion for Default Judgment (Doc. 45) is **moot** and his Amended Motion for Default Judgment (Doc. 55) is **denied**.

**IT IS SO ORDERED.**

---

[82] Doc. 77 at 2; *see* Doc. 20 (listing addresses in Kansas City, Missouri).

[83] Docs. 96–99 (showing summons returned executed for municipal entities by certified mail, with service dates on September 10 and 12, 2025).

Dated: October 15, 2025

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE